549 P.2d 224

**STATE of Arizona, Appellee,**

v.

**Ismael FUENTES, Appellant.**

**No. I CA–CR 1159.**

Court of Appeals of Arizona,
Division 1,
Department B.

April 27, 1976.

Rehearing Denied May 25, 1976.

Review Granted June 15, 1976.

Bruce E. Babbitt, Atty. Gen., by Shirley H. Frondorf, Asst. Atty. Gen., and Raymond Aaron Kizer, Certified Third Year Law Student Under Rule 28(e), 17A A.R.

S., Rules of the Supreme Court, Phoenix, for appellee.

Martin, Feldhacker & Friedl by William J. Friedl, Phoenix, for appellant.

## OPINION

HAIRE, Chief Judge, Division 1.

Appellant-defendant presents three questions for review on this appeal following the revocation of his probation and the subsequent imposition of a maximum prison sentence. Defendant's first question raises the issue of whether a defendant may, in an appeal following the revocation of his probation, assert the invalidity of the original conviction which resulted in the imposition of probation. The second question raises the issue of whether the sentence imposed upon defendant after the revocation of probation constitutes a breach by the state of its plea agreement with the defendant. The third question is whether defendant was denied equal protection of the law because his presentence incarceration in lieu of bond plus the maximum prison sentence given exceeded the statutory maximum prison sentence. The facts are as follows.

Pursuant to a plea agreement, defendant pled guilty on February 15, 1974, to a charge of "Possession of a Narcotic Drug". On March 25, 1974, imposition of sentence was suspended, and defendant was placed on probation for a period of five years. A term and condition of defendant's probation was that he be incarcerated in the Maricopa County Jail for a period of six months, to date from January 11, 1974, which was the date of his arrest on the charge involved. On June 7, 1974, defendant was released from his probationary jail term to participate in a narcotics rehabilitation program.

On November 7, 1974, defendant was again arrested, this time on a burglary charge, to which he eventually also entered a plea of guilty. Based upon the burglary conviction, the trial judge revoked defendant's probation, and on March 3, 1975, sen-

tenced him on the original narcotics possession charge to eight to ten years imprisonment in the Arizona State Prison, with the sentence to run from November 7, 1974, the date of his arrest on the burglary charge.

## MAY DEFENDANT NOW APPEAL FROM HIS ORIGINAL CONVICTION

Defendant's notice of appeal was filed on March 3, 1975, considerably more than 20 days after the entry of the judgment of guilt on the original narcotics possession charge and the placing of defendant on probation, which occurred on March 25, 1974. The courts of this state have uniformly held that failure to appeal from the original judgment and sentence of probation within the 20 day time limit prescribed by Rule 31.3, Rules of Criminal Procedure, forecloses a subsequent appeal from that original judgment and sentence following any subsequent revocation of probation. *State v. Ingles,* 110 Ariz. 295, 518 P.2d 118 (1974); *State v. Miller,* 110 Ariz. 43, 514 P.2d 1039 (1973); *State v. Hughes,* 22 Ariz.App. 19, 522 P.2d 780 (1974). From the language of Rule 31.3, which allows a defendant to file his notice of appeal within 20 days after "the entry of judgment *and sentence*" (emphasis added), defendant argues that in his case the imposition of sentence was suspended at the time he was placed on probation on March 25, 1974, and not pronounced until after his probation was revoked on March 3, 1975. He thus concludes that the appeal time on the original determination of guilt remained open so as to make the filing of his later notice of appeal timely. In making this argument, defendant ignores the fact that the term "sentence" as used in the Rules of Criminal Procedure, is defined in Rule 26.1 b as meaning ". . . the pronouncement by the court of the penalty imposed upon the defendant after a judgment of guilty", and, that the comment to that definition expressly states that it "does include probation even though in

most cases, under Ariz.Rev.Stat.Ann. § 13–1657(A) (Supp.1972), imposition of sentence must be suspended in order to place a person on probation." It is thus clear that for purposes of appeal, "sentence" was imposed upon defendant at the time he was placed upon probation, and that defendant may not at this late date appeal from the original determination of his guilt.

## THE ALLEGED BREACH BY THE STATE OF ITS PLEA AGREEMENT WITH DEFENDANT

Under the plea agreement presented to the trial court at the time defendant pled guilty, the state agreed to dismiss a second count charging felony possession of marijuana, and not to allege prior convictions. The state also stipulated to a maximum prison sentence of two to three years in the Arizona State Prison, with an understanding that the defendant, in lieu of the prison sentence, would request a drug program-connected term of probation. As previously indicated, after acceptance of defendant's guilty plea made pursuant to the plea agreement, he was placed on probation. His contention that the plea agreement was violated is based upon the fact that after his probation was revoked, he received a sentence of eight to ten years in the Arizona State Prison, thereby exceeding the originally stipulated two to three year term.

We recognize that under *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the state is bound by plea agreements which induce a plea of guilty. This principle also finds recognition in the provisions of Rule 17.4 e, Rules of Criminal Procedure, which specifically requires that the defendant be given an opportunity to withdraw his plea if the trial judge rejects the plea agreement or any of its provisions. With these principles in mind, we have reviewed the record, and there is nothing to indicate that the sentencing stipulation contained in the plea agreement was to apply to any post-

revocation sentencing. This conclusion is further supported by the fact that at the time defendant was placed on probation, the trial court specifically advised the defendant that if he violated the terms of his probation he could be sentenced "in accordance with the law", that is, to a term of up to ten years as outlined in the original plea agreement signed by the defendant. In addition, we note that defendant made no reference to the originally stipulated sentence at the time his probation was revoked and the eight to ten year sentence imposed. In summary, we find no indication, nor even any contention, in the record before the trial court that the plea agreement was breached. We next consider the third question raised by appellant.

## DEFENDANT'S CONTENTION CONCERNING THE STATUTORY MAXIMUM SENTENCE

As previously stated, defendant asserts that he was denied equal protection under the law because his presentence incarceration in lieu of bond plus the ten year prison sentence given after revocation, exceeded the statutory maximum prison sentence. Looking at the facts, it is true that on the narcotics charge here involved defendant was subjected to presentence incarceration in lieu of bond for a period of 73 days, from January 11, 1974, to March 25, 1974. Under A.R.S. § 36–1002A, the maximum term of imprisonment in the Arizona State Prison which could have been imposed upon defendant was ten years, and after revocation he was sentenced to that maximum term in prison. In *State v. Sutton*, 21 Ariz.App. 550, 521 P.2d 1008 (1974), we held that where the defendant was given the maximum statutory sentence and was not given credit for presentence time in jail due to his failure to make bond, there was a denial of equal protection. From the foregoing it might appear that defendant's equal protection argument is meritorious. However, there is an additional factor present which precludes an automatic application of *Sutton* to the facts of this case. Here, although defendant did not re-

ceive credit for his original presentence incarceration against the prison term imposed after his probation revocation, he did receive credit for his 73 day presentence incarceration against the six month jail term imposed as a condition of probation.

Defendant's equal protection argument has its genesis in *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). As stated in *Williams:*

". . . once the State has defined *the outer limits of incarceration* necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency." (Emphasis added). 399 U.S. at 241, 90 S.Ct. at 2022.

In determining "the outer limits of incarceration" established by the Arizona statutes when the imposition of sentence has been suspended and a defendant has been placed on probation, two facets of the statutory punishment scheme must be considered. First, incarceration in the county jail for a period not to exceed one year may be imposed as a term and condition of probation. A.R.S. § 13–1657 A(1). Second, upon revocation after breach of probation, the court may "pronounce sentence . . . within the longest period for which the defendant might have been sentenced . . . ." A.R.S. § 13–1657 C. Here, the longest period for which defendant might have been sentenced to the Arizona State Prison under § 36–1002 A was ten years. Thus, it is apparent that under the express provisions of the Arizona statutes the "outer limits of incarceration" is a total of eleven years—a maximum of one year in the county jail imposed as a condition of probation, plus a maximum of ten years in the Arizona State Prison.

In arriving at this conclusion, we have considered the language of A.R.S. § 13–1657 A(1), which limits the court's power to suspend imposition of sentence to a period "not exceeding the maximum term of sentence which may be imposed . . . ." The words "maximum term of sentence" obviously constitute a reference to the governing sentencing statute, here, A.R.S. § 36–1002 A. Applying that statute, the maximum period for which sentencing could have been suspended for defendant was ten years, including the suspension during any time spent in jail as a condition of probation. Were it not for the express and clear language of A.R.S. § 13–1657 C, *supra,* authorizing the imposition of a sentence upon revocation "within the longest period for which the defendant might have been sentenced", it might well be argued that upon revocation the maximum allowable prison sentence would be one extending from the time of revocation to the end of defendant's original probationary term. Indeed that is the statutorily required result when, at the initial sentencing hearing, sentence is actually imposed, but the *execution thereof suspended.*[1] However, for the crime here involved the statutes do not authorize the imposition of a sentence with a suspended execution thereof. Here, the imposition of sentence was suspended, and we cannot ignore the plain statutory language which allows a sentence upon revocation thereafter to the "longest period for which the defendant might have been sentenced . . . ."

Returning to the facts of this case, as we have stated, defendant's presentence incarceration in lieu of bond was credited against his six month probationary jail sentence. Thus, when consideration is given to the entire statutory punishment scheme, defendant has received appropriate credit for his presentence incarceration.

[1]. In the ordinary case, the trial judge does not have the authority to impose sentence, and then suspend execution thereof. That authority is reserved to situations where the sentence " . . . is to pay a fine, and the defendant is imprisoned until the fine is paid . . . ." *See* A.R.S. § 13–1657 A(2); *State v. Edge,* 96 Ariz. 302, 394 P.2d 418 (1964).

Upon these facts we find no evidence of the "invidious discrimination based upon indigency" which formed the bais of the United States Supreme Court's decision in *Williams v. Illinois, supra,* and of our subsequent decision in *State v. Sutton, supra.* In arriving at the foregoing conclusion, we recognize that in *State v. Brown,* 23 Ariz. App. 225, 532 P.2d 167 (1975), in considering a defendant's contention that the trial judge should have given him credit against his prison sentence for time served in the county jail as a condition of probation, we stated that the appellant's incarceration as a term of probation was legally synonymous with other presentence incarceration. Such statement was not necessary to the result reached in *Brown,* and, upon more complete analysis, is obviously incorrect. We hold that the failure of the trial court to credit defendant's presentence incarceration against his prison sentence did not constitute a denial of equal protection to defendant.

Although not directly raised by defendant's counsel, we have considered the related questions of whether there are any requirements under the Arizona statutes, Rules of Criminal Procedure, or federal constitutional double jeopardy principles which would require that any or all of defendant's probationary jail time be credited against the maximum prison sentence which defendant received.

■ Considering first the Rules of Criminal Procedure, the Arizona Supreme Court has previously considered the limited question of whether these rules require that credit against the prison term be given for probation jail time, and has held that the rules do not require that such credit be given. *See State v. Jameson,* 112 Ariz. 315, 541 P.2d 912 (1975); *State v. Barnett,* 112 Ariz. 212, 540 P.2d 684 (1975).

■ Turning next to the Arizona statutory requirements, we have previously discussed herein the pertinent provisions found in A.R.S. § 13–1657. From these provisions it is apparent that the Arizona

legislature did not intend that the maximum terms specified for imprisonment in the Arizona State Prison would necessarily be the maximum term of incarceration involved as punishment for a specified crime. Rather the intent was that, where applicable, the maximum term of incarceration would be the cumulative total of the maximum probation jail term allowed and the maximum prison sentence allowed. If we are wrong in our interpretation of the Arizona statutory scheme, and the Arizona statutory scheme does not allow a maximum term of incarceration equaling the cumulative total of the maximum probation jail term and the maximum prison sentence allowed, then it is not necessary to consider equal protection, due process of law or double jeopardy principles. The sentence would be illegal, simply because not allowed under the Arizona statutes.

■ Even though we have held that the sentence here imposed does not contravene the Arizona statutory sentencing provisions, we must still consider whether double jeopardy principles enunciated, in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), require that credit be given against a prison sentence for time served as a term and condition of probation on the same charge. As stated in that decision, one of the constitutional protections afforded by the Fifth Amendment guarantee against double jeopardy consists of protection against being punished twice for the same offense. It cannot be logically argued that the imposition of probation does not constitute punishment as that term is generally used. *See State v. Robbins,* 110 Ariz. 284, 518 P.2d 107 (1974). This is true, regardless of whether the probation involves a condition of jail time or conditions specifying a lesser degree of deprivation of liberty. Also, it is clear that both the imposition of probation and the subsequent imprisonment after revocation constitute punishment flowing from the same offense. *State v. Robbins, supra; State v. Pietsch,* 109 Ariz. 261, 508 P.2d 337 (1973); *State v. Crow-*

*der*, 103 Ariz. 264, 440 P.2d 29 (1968). Does this mean that under the double jeopardy principles set forth in *North Carolina v. Pearce, supra*, a defendant placed upon probation may not, upon revocation, be subsequently punished by sentence to imprisonment, because to do so would constitute "being punished twice for the same offense"? We know of no authority so holding, and the reason is obvious. Double jeopardy principles do not proscribe successive or multiple facets of an otherwise constitutionally acceptable punishment scheme adopted by a state as punishment to be imposed as the result of any one particular conviction. *North Carolina v. Pearce* did not involve the imposition of successive facets of a single punishment scheme relating to the same conviction, but rather involved a resentencing upon reconviction after the original conviction had been set aside and a new trial ordered. It was in that factual context that the United States Supreme Court held that double jeopardy principles precluded "multiple punishments for the same offense", and having concluded that double jeopardy principles did apply to the reconviction and resentencing there involved, proceeded to formulate guidelines to be applied so as to avoid the duplication of punishment flowing from the first and second convictions, stating:

> "We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense. If, upon a new trial, the defendant is acquitted, there is no way the years he spent in prison can be returned to him. But if he is reconvicted, those years can and must be returned—by subtracting them from whatever new sentence is imposed." 395 U.S. at 718, 89 S.Ct. at 2077.

 Recognizing that the double jeopardy principles enunciated in *North Carolina v. Pearce* do not apply to the imposition of sentence after revocation of probation, the Arizona courts have repeatedly rejected double jeopardy contentions that credit must be given against a subsequently imposed prison sentence for "street time" spent on probation. *State v. Benton*, 19 Ariz.App. 333, 507 P.2d 135 (1973); *State v. Tritle*, 15 Ariz.App. 325, 488 P.2d 681 (1971); *State v. McFord*, 13 Ariz.App. 273, 475 P.2d 758 (1970). Although none of the decisions involved the subsequent imposition of a prison sentence after a *probation jail term*, we do not believe that this distinction leads to a different legal conclusion. The imposition of probation time incarceration is a statutorily authorized condition of probation in the same legal context as other conditions of probation. Thus the rationale of the above cases applies equally to "street time" probation and incarceration as a term of probation.

We recognize that here the defendant was subsequently given the maximum *prison* sentence allowable for the crime involved. However, if double jeopardy principles were applicable, they would require that credit be given without regard to the question of whether a *maximum* prison sentence was subseqently imposed as opposed to some lesser prison sentence. As stated in *North Carolina v. Pearce*:

> "The constitutional violation is flagrantly apparent in a case involving the imposition of a *maximum sentence after reconviction*.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> "Though not so dramatically evident, the same principle obviously holds true whenever punishment already endured is not fully subtracted *from any new sentence imposed*." (Emphasis added). 395 U.S. at 718, 89 S.Ct. at 2077

We are aware of several Federal District Court decisions which purport to extend the *North Carolina v. Pearce* double jeopardy sentence credit guidelines so as to include presentence detention where the maximum prison sentence has thereafter been imposed. *See Taylor v. Gray*, 375 F. Supp. 790 (E.D.Wis.1974); *Culp v.*

*Bounds,* 325 F.Supp. 416 (S.D.N.C.1971); and *Parker v. Bounds,* 329 F.Supp. 1400 (E.D.N.C.1971). In reviewing the facts in these cases we note that each actually involved the question of incarceration by reason of indigency, and that therefore the discussion of double jeopardy principles constituted an alternate basis for sentence credit over and above the more appropriate and obviously applicable basis recognized in *Williams v. Illinois, supra.*[2] In this connection, we note that in *Taylor v. Gray, supra,* the District Judge stated:

> "The concept of multiple punishments has been extended to comprehend any imprisonment *in excess of the statutory penalty* for the offense of which a defendant was convicted." (Emphasis added). 375 F.Supp. at 793

Even if we assume that the double jeopardy multiple punishment concept could be so extended, it would not be applicable here, inasmuch as the combined incarcerations meted to the defendant simply were not in excess of the maximum incarceration allowed under the Arizona statutory punishment scheme for the offense of which defendant was convicted.

The judgment and sentence are affirmed.

EUBANK, J., concurs.

JACOBSON, Presiding Judge (dissenting):

I must dissent from the majority's conclusion as to the statutory "outer limits of incarceration" where county jail time is imposed as a condition of probation and because of this disagreement, I must also dissent from the failure of the majority to allow credit for this probationary jail time. As to the first two issues raised by the defendant and disposed of by the majority, I concur.

It is apparent that the majority's opinion, at least initially, denying pre-probation incarceration time credit and denying credit for time spent while incarcerated in the county jail as a condition of probation, is bottomed on the premise, in the words of the majority, "that the Arizona statutes contemplate that the 'outer limits of incarceration, as a part of the statutory punishment scheme is a total of eleven years—a maximum of one year in the county jail imposed as a condition of probation, plus a maximum of 10 years in the Arizona State Prison."

Turning first to the denial of pre-probationary incarceration credit time, I simply cannot find the statutory contemplation espoused by the majority. A.R.S. § 36–1002, the statute under which the defendant was originally sentenced, in part provides that one who unlawfully possesses a narcotic drug:

> "shall be punished by imprisonment in the state prison for not less than two nor more than ten years, and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than two years in prison."

Rather than being sentenced to the Arizona State Prison for a maximum of ten years, as allowed under this statute, the defendant was placed on probation under A.R.S. § 13–1657. Subsection (A)(1) of this statute provides:

> "The court may suspend the imposing of sentence and may direct that the suspension continue for such period of time, *not exceeding the maximum term of sentence which may be imposed,* and upon such terms and conditions as the court determines, and shall place such person on probation, under the charge and supervision of the probation officer of the court during such suspension. One of the conditions imposed may be incarceration in the county jail for a specific period not to exceed one year." (emphasis added)

2. For a contrary holding, together with a discussion and criticism of these District Court decisions, *see State v. Wills,* 69 Wis.2d 489, 230 N.W.2d 827 (1975).

This statute clearly indicates that the maximum time this defendant could have been placed on probation was a total period of ten years. It is, in my opinion, equally clear that the one year possible county jail time is a *condition* of that probation and thus of necessity must be considered, as a component of, rather than an addition to, the maximum time probation may be continued. In this regard, I do not believe that the trial court can properly put the defendant on probation for 11 years under this statute, one year being spent in the county jail, and yet this is a logical conclusion to be drawn from the majority opinion.

Admittedly, the majority draws the additional year of incarceration time where probation is granted from the language of A.R.S. § 13–1657(C), which provides: "Upon the revocation and termination of the probation, the court may, if the sentence has been suspended, pronounce sentence at any time after the suspension of the sentence *within the longest period [of, time] for which the defendant might have been sentenced . . . ."

When considering the legislative history of this section I am unable to draw the legislative intent to increase the amount of incarceration time drawn by the majority. The underlined portion of A.R.S. § 13–1657 appears in the 1939 code in § 44–2229 ACA and was carried forward to the 1956 code. At that time incarceration in the county jail as a condition of probation was not allowed. *See, State v. Vanmeter,* 7 Ariz.App. 422, 440 P.2d 58 (1968). There was no question that the "outer-limits of incarceration" at that time, even if probation was granted, could not exceed the statutory maximum set forth by the legislature. In 1970, and apparently in response to the holding in *Vanmeter, supra,* the legislature empowered the court, as a condition of probation, to exact county jail incarceration. In my opinion, this legislative grant of power was merely an attempt to place in the hands of the trial court, additional options in handling the criminal who is not

entitled to clear probation, but is also not entitled to state prison incarceration. I do not believe the legislature intended, by giving this previously unavailable option to the sentencing court, to change the previous law as to the amount of time the defendant must spend behind bars.

Aside from this lack, in my opinion, of a legislative scheme to make the "outer limits of incarceration" eleven years rather than the statutorily mandated ten years, I am concerned that the majority may have created, without legislative direction, a crime known as "violation of probation". It is clear that a person who is not placed on probation could under A.R.S. § 36–1002(A) be incarcerated only for a maximum of ten years. Yet under the majority opinion, a person who is placed on probation and is given one year in the county jail as a condition of that probation can be incarcerated for a a period of eleven years. Again, aside from the equal protection arguments which in my opinion are serious, what causes this enhanced incarceration? It appears to me that the sole act which brings about the possibility of enhanced time behind bars is that the probationer violated the terms of his probation. Thus, in my opinion, the probationer is being punished by incarceration time greater than that imposed upon a non-probationer because he violated the terms of his probation. This concept of a separate punishable offense being based upon the breach of probation has been rejected by all the cases cited by the majority. *See, State v. Robbins,* 110 Ariz. 284, 518 P.2d 107 (1974); *State v. Pietsch,* 109 Ariz. 261, 508 P.2d 337 (1973); *State v. Crowder,* 103 Ariz. 264, 440 P.2d 29 (1968). All of these cases likewise stand for the proposition that punishment flowing as a result of probation being revoked is not punishment flowing from the probationary breach, but is instead punishment on the original charge. I find no legislative intent, by merely making county jail time a condition of probation, to legislate away this case law and create a separate crime

for breach of terms of probation justifying an enhanced incarceration period.

Lastly, by the majority opinion finding that the "outer limits of incarceration" be eleven years in this case, it has completely deprived this defendant of credit for pre-sentence incarceration, a credit he would, the majority agrees, be entitled to had he not been placed on probation. Thus the bottom line of the majority's opinion on this point is that the defendant must spend ten years in the state prison without credit for pre-sentence incarceration, to me, a clear violation of our holding in *State v. Sutton*, 21 Ariz.App. 550, 521 P.2d 1008 (1974). This result is reached by the majority regardless of the fact that he would be entitled to this credit if he was a non-probationer and the fact that he will end up spending more than the statutory maximum of ten years merely because he was indigent.

I would therefore hold as a minimum, that the statutory maximum punishment exacted for the crime by the legislature is ten years, not eleven years, and that the defendant is entitled to credit for pre-probationary time spent in jail as a result of his indigency.

I would, however, not reach the issue of credit for pre-probationary incarceration, for, in my opinion, the defendant is entitled to credit for his entire stay in the county jail (where credit for pre-sentence incarceration was given) when he was subsequently, upon revocation of probation, sentenced to the maximum incarceration period. I reach this conclusion based upon the application of the Fifth Amendment to the United States Constitution guarantee against double punishment.

First, I am of the opinion that the Fifth Amendment to the United States Constitution guarantee against double jeopardy is not limited to prohibitions against being twice tried for the same offense, but also includes protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct.

2072, 23 L.Ed.2d 656 (1969). In discussing this issue, the *Pearce* court cited the landmark case of *Ex parte Lange*, 18 Wall. 163, 168, 21 L.Ed. 872:

"If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense. And . . . there has never been any doubt of [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense.

\* \* \* \* \* \*

". . . [T]he constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being tried for it." Id., at 173.

The Court went on to state:

"We think it is clear that this basic constitutional guarantee is violated when punishment already exacted for an offense is not fully 'credited' in imposing sentence upon a new conviction for the same offense. The constitutional violation is flagrantly apparent in a case involving the imposition of a maximum sentence after reconviction.

"Suppose for example, in a jurisdiction where the maximum allowable sentence for larceny is 10 years' imprisonment, a man succeeds in getting his larceny conviction set aside after serving 3 years in prison. If, upon reconviction, he is given a 10-year sentence, then, quite clearly, he will have received multiple punishments for the same offense. For he will have been compelled to serve separate prison terms of 3 years and 10 years, although the maximum single punishment for that offense is 10 years' imprisonment.

\* \* \* \* \* \*

"We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that

punishments already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense."

Although in *Pearce* double punishment involved time served on a prior, vacated sentence, my research discloses that the majority of cases have also extended it to include presentence detention where the maximum sentence is imposed, *Taylor v. Gray*, 375 F.Supp. 790 (E.D.Wis., 1974); *Culp v. Bounds*, 325 F.Supp. 416 (S.D.N.C.1971); *Parker v. Bounds*, 329 F.Supp. 1400 (E.D.N.C.1971) [contra: *State v. Wills*, 69 Wis.2d 489, 230 N.W.2d 827 (1975)], and it has also been extended to time spent in confinement while the defendant appealed a life sentence even though the state statutory provision denied such credit. *Wilson v. North Carolina*, 438 F.2d 284 (4th Cir. 1971).

I believe the rationale to be equally applicable to "punishment" in the form of incarceration exacted as a term of probation where upon revocation the maximum statutory sentence of imprisonment is imposed. In such a case multiple punishments for the same offense are exacted, for in this case the defendant will be compelled to serve the six months in jail as a result of probation and 10 years in prison while the statutory maximum single imprisonment punishment exacted for the offense is only 10 years. I do not intend to infer that punishment of a non-incarceration character is likewise entitled to "credit" where the maximum sentence is subsequently imposed. I am aware that probation is granted in numerous cases which impose restraints upon the liberty of the defendant and thus theoretically could be classified, as indicated by the majority, as "punishment", such as restraint on travel, associations, indulging in particular non-criminal behavior, requiring reporting or testing, etc. In my opinion such non-incarceration restraints do not reach the level of incarceration "punishment" which calls into effect the double jeopardy clause of either the United States or Arizona Constitution.

Moreover, in my opinion, the double punishment aspects of double jeopardy only come into play where the single incarceration punishment exacted by the legislature is exceeded. For this reason, I would specifically hold that upon revocation of probation, time spent in jail as a condition of probation need not be credited, where the probation jail time plus the sentence imposed upon revocation does not exceed the maximum single incarceration punishment imposed by statute. See *State v. Pena*, 26 Ariz.App. 442, 549 P.2d 222 (filed May 6, 1976).

Having previously concluded that the punishment exacted upon revocation of probation is related solely to the original crime charged, the "punishment" of incarceration imposed as a condition of probation upon that same charge when added to the subsequent "punishment" of incarceration for that charge cannot constitutionally exceed the statutory maximum incarceration "punishment" for to do so results in double jeopardy, that is, punishing twice for the same crime in excess of the maximum punishment allowed by statute.

In reaching this result, I am cognizant of the recent cases of *State v. Jameson*, 112 Ariz. 315, 541 P.2d 912 (1975) and *State v. Barnett*, 112 Ariz. 212, 540 P.2d 684 (1975). These cases hold that a defendant is not entitled to credit for time spent in a county jail pursuant to the conditions of his probation when he is later sentenced after revocation. However, neither of these cases appears to involve statutory maximums being imposed upon revocation. Both cases rely on the comments to Rule 27.7(d) which states:

"In imposing a sentence after probation has been revoked, the court shall take into consideration the time the probationer has been incarcerated as a result of the filing of the petition for revocation, as well as the period of incarceration between his initial arrest and the granting of probation, and may credit such time against the sentence imposed."

This comment, like Rule 26.10(b)(2), Rules of Criminal Procedure, 17 A.R.S. which requires that at the time of pronouncement of judgment and sentence the Court shall

"state that it has considered the time the defendant has spent in custody on the present charge", both follow the policy consideration pronounced in *Kennedy,* that is, that although presentence jail time need not be credited as a matter of right, it should be considered by the Court in passing sentence. These rules and comments are totally silent as to the holding in *Sutton,* supra, which makes it mandatory for the trial court to give credit for pre-sentence incarceration when the time of incarceration plus the sentence imposed exceeds the statutory maximum. For these reasons, in my opinion neither *Jameson* nor *Barnett* are dispositive of the case at bar.

I would therefore hold that where a defendant is placed on probation and as a condition thereof is required to serve time in the county jail, he must be credited with this time to the extent the total incarceration time imposed upon revocation of probation, plus the probationary jail time exceeds the maximum penalty permitted by statute.[1]

1. Nothing in this dissent is meant to infer that when a defendant is given jail time as a condition of probation the Court is thereafter precluded from sentencing upon revocation of probation on a theory that such sentencing alone would amount to double punishment. As stated earlier, the punishment imposed in both instances flows from the same offense. It is only where the statutory maximum is exceeded that the double punishment clause is violated.