NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MIKE RUBEN ALVAREZ, *Appellant.*

No. 1 CA-CR 13-0275

FILED 9-9-14

Appeal from the Superior Court in Maricopa County
No. CR2011-145005-001
The Honorable Joseph C. Kreamer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David A. Simpson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Christopher V. Johns
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Maurice Portley delivered the decision of the Court, in which Judge Michael J. Brown and Chief Judge Diane M. Johnsen joined.

_____

**P O R T L E Y,** Judge**:**

¶1        Defendant Mike Ruben Alvarez was convicted of two counts of attempted second-degree murder, four counts of aggravated assault, two counts of endangerment, and other offenses arising from his running gun battle with police officers attempting to arrest him.  He appeals his convictions and the resulting sentences.  He raises three arguments: (1) the prosecutor impermissibly vouched for the State during the closing argument; (2) there was insufficient evidence to show that two of the victims were recklessly endangered by a substantial risk of imminent death during the running gun battle; and (3) this court should enlarge the right to a jury trial to include any sentencing enhancement.  For the reasons that follow, we affirm.

**FACTUAL BACKGROUND**

¶2        Two police officer were on patrol on August 4, 2011.  Alvarez was riding his bicycle on the sidewalk and going very fast.  The officers were suspicious and tried to make contact with Alvarez, but he pedaled away and rode through a park with the officers following him.  He crashed his bicycle and, as the officers tried to take him into custody, he rolled over and shot and wounded both officers and, in turn, was shot by one of them.  Alvarez then went into the adjacent house with an open garage door, confronted a victim, pointed a gun at her and demanded the keys to her car, but left after she told him the car was broken.  Alvarez came out yelling profanities, and shooting at the officers.  The officers returned fire as he moved towards them.  After Alvarez went down, the guns were kicked away.

¶3        The two officers and Alvarez were taken to the hospital.  The officers were released later that day.  Alvarez was subsequently indicted for two counts of attempted first-degree murder, four counts of aggravated assault, burglary in the first degree, attempted theft of a means of transportation, misconduct involving weapons and two counts of endangerment. After the trial, the jury did not convict Alvarez of attempted

first-degree murder, but did convict him of the lesser-included counts of attempted second-degree murder and all the other counts. We have jurisdiction over this appeal pursuant to Arizona Revised Statutes ("A.R.S.") section 12-120.21(A)(1), 13-4031, and -4033(A).[1]

## DISCUSSION

### I

¶4        Alvarez argues that the prosecutor repeatedly engaged in misconduct during closing argument. Specifically, he contends that the prosecutor: (1) used the pronouns "I" and "we" during his closing argument and improperly injected his personal beliefs; (2) implied that Alvarez might offend again if acquitted; and (3) advised the jury that only the judge could consider sympathy for Alvarez. Because Alvarez failed to object to any of the claimed misconduct at trial, he bears the burden of establishing the prosecutor engaged in misconduct, the misconduct constituted fundamental error, and the misconduct caused him prejudice. *See State v. Henderson*, 210 Ariz. 561, 568, ¶ 22, 115 P.3d 601, 608 (2005). Error is fundamental when it goes to the foundation of the defendant's case, takes from him a right essential to his defense, and is error of such magnitude that he could not possibly have received a fair trial. *Id.* at 567, ¶ 19, 115 P.3d at 607. To prove prejudice, defendant must show that a reasonable jury could have reached a different result absent the error. *Id.* at 569, ¶ 27, 115 P.3d at 609.

¶5        "[P]rosecutors have wide latitude in presenting their closing arguments to the jury: 'excessive and emotional language is the bread and butter weapon of counsel's forensic arsenal, limited by the principle that attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury.'" *State v. Jones*, 197 Ariz. 290, 305, ¶ 37, 4 P.3d 345, 360 (2000) (citation omitted). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46, 160 P.3d 203, 214 (2007) (citation and internal quotation marks omitted).

---

[1] We cite to the current version of the statute unless otherwise noted.

¶6         First, even though the prosecutor used "I" and "we," the question is whether the prosecutor engaged in impermissible vouching during the closing argument.   There are "two forms of impermissible prosecutorial vouching:  (1) where the prosecutor places the prestige of the government behind its witness; [and] (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. King*, 180 Ariz. 268, 276-77, 883 P.2d 1024, 1032-33 (1994) (citation omitted).   Alvarez argues that the prosecutor engaged in both types of vouching, by implicitly suggesting that the prosecutor personally believed in the case, and by "making explicit references to his personal knowledge or information not in the record."   We disagree.

¶7         The use of personal pronouns is not necessarily improper in closing arguments when used to marshal evidence admitted at trial, as long as it is not used to bolster the credibility of witnesses or to suggest that evidence not presented to the jury supports the argument.  *See State v. Lee*, 185 Ariz. 549, 554, 917 P.2d 692, 697 (1996) (holding that prosecutor's repeated preface of statements with, "I think," was not improper and, in any case, did not rise to the level of fundamental error); *United States v. Ruiz*, 710 F.3d 1077, 1086 (9th Cir. 2013) (holding that use of "we know" was proper because it was used "to marshal evidence actually admitted at trial and reasonable inferences from the evidence, not to vouch for witness veracity or suggest that evidence not produced would support a witness's statements.").   Here, the prosecutor's use of the personal pronouns in his closing argument did not suggest that he had information not presented to the jury, but rather was simply a means of introducing and summarizing his view of what the evidence — which he outlined at length — demonstrated.  This was not improper.

¶8         Second, Alvarez argues that the prosecutor engaged in misconduct by arguing that police acted appropriately in attempting to stop Alvarez for what they viewed as suspicious behavior and by asking, "not . . . talking about this defendant in particular, just . . . a general policy," "what if" police failed to stop a suspicious person, and it turns out that he had committed murder or rape, or "victimizes somebody in the neighborhood later that day," "what do those officers end up saying?"  The prosecutor's argument, however, was not directed to the risk Alvarez might reoffend if he were acquitted, *see State v. Makal*, 104 Ariz. 476, 478, 455 P.2d 450, 452 (1969), but responded to Alvarez's argument that police had no good reason to stop him in the first place. The prosecutor's example of what might happen if police did not pursue persons acting suspiciously was not improper rebuttal.

¶9 The prosecutor's argument that only the judge could be swayed by sympathy for the defendant in imposing punishment was improper. It was improper because the argument was not based on any evidence presented at trial and was not relevant to the jury's consideration of the evidence, especially given the fact that the jury had been instructed not to worry about any possible sentence. There is nothing, however, in the record to suggest that the single remark during argument could have affected the verdict to such an extent that is necessary to reverse for prejudicial misconduct. *See Morris*, 215 Ariz. at 335, ¶ 46, 160 P.3d at 214. More importantly, the jury had been instructed that the argument of counsel was not evidence and that the jury had to determine the facts based on the evidence presented at trial. Because we presume the jury followed the instructions, *State v. Reyes*, 232 Ariz. 468, 471, ¶ 7, 307 P.3d 35, 38 (App. 2013), we find no fundamental prejudice by the one improper comment during argument.

¶10 Finally, Alvarez contends that because the "prosecutor intentionally engaged in improper conduct and did so with indifference, if not specific intent, to prejudice the defendant," we should reverse on the basis of cumulative argument error. *See State v. Gallardo*, 225 Ariz. 560, 568, ¶ 35, 242 P.3d 159, 167 (2010). The trial record does not suggest pervasive prosecutorial misconduct during closing argument that deprived Alvarez of a fair trial.

II

¶11 Alvarez also contends that the evidence was insufficient to prove that he fired shots at a nearby house occupied by a mother and child, and thereby recklessly endangering them. We review de novo the sufficiency of the evidence to support a conviction. *State v. West*, 226 Ariz. 559, 562, ¶15, 250 P.3d 1188, 1191 (2011*)*. We view the facts in the light most favorable to upholding the jury's verdict and resolve all conflicts in the evidence against defendant. *State v. Girdler*, 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1983*)*.

¶12 The offense of felony endangerment requires proof that the defendant "recklessly endanger[ed] another person with a substantial risk of imminent death or physical injury." A.R.S. § 13-1201(A). At trial, the ballistics evidence demonstrated that during the gun battle with police, Alvarez fired one shot that hit the house occupied by the mother and child, fired a second shot that hit one of the vehicles in the driveway, and likely fired a third shot that hit the house, penetrated the wall and traveled through the room where the mother and child were watching television. In

fact, Alvarez testified and admitted that the bullets that hit the house came from his revolver. Moreover, the evidence demonstrated that Alvarez fired first, and engaged the police officers in a gun battle in a yard between two houses. The evidence was more than sufficient to demonstrate that Alvarez recklessly created a substantial risk of imminent death for the mother and child occupying one of those houses. We find no error.

III

**¶13**        Alvarez also asks this court to use the holding of *Alleyne v. United States*, 133 S. Ct. 2151 (2013) to require the jury, rather than the judge, to find the existence of prior convictions used for sentencing enhancement.[2] We decline the invitation.

**¶14**        In *Alleyne,* the U.S. Supreme Court held that any fact that increases the mandatory minimum sentence must be submitted to the jury and proved beyond a reasonable doubt. *Id.* at 2163. Alvarez concedes, however, that *Alleyne* did not overrule the rule for proof of prior convictions first delineated in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and reaffirmed in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny. *See Alleyne,* 133 S. Ct. at 2160 n. 1 ("Because the parties do not contest [*Almendarez-Torres's*] vitality, we do not revisit it for purposes of our decision today."); *Almendarez-Torres*, 523 U.S at 239-247 (rejecting constitutional claim that prior conviction is an element of offense that must be alleged in indictment and proved to jury beyond a reasonable doubt); *Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Blakely v. Washington*, 542 U.S. 296, 301 (2004) (same). "Our constitutional system requires adherence to the rule of law established in *Almendarez-Torres* unless and until the [United States Supreme] Court unequivocally disapproves its holding." *State v. Ring*, 204 Ariz. 534, 557, ¶ 61, 65 P.3d 915, 939 (2003). The Supreme Court has not done so. *See Alleyne,* 133 S. Ct. at 2160 n. 1. Accordingly, the superior court properly found that Alvarez had prior felony convictions that could be used to enhance his sentences.

---

[2] We note that Alvarez testified at trial and admitted that he had prior felony convictions.

¶15       For the foregoing reasons, we affirm Alvarez's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: JT